**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETCONNECT WIRELESS LLC<br><br>*Plaintiff,*<br><br>vs.<br><br>ZYXEL COMMUNICATIONS CORPORATION AND ZYXEL NETWORKS CORPORATION<br><br>*Defendant.* | CASE NO.:  2:26-CV-00537<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

NetConnect Wireless LLC ("NetConnect" or "Plaintiff") files this Complaint against Zyxel Communications Corporation ("Zyxel Communications") and Zyxel Networks Corporation ("Zyxel Networks") (collectively "Zyxel" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

**THE PARTIES**

2.      NetConnect, is a limited liability company organized under the laws of the State of Texas and its address is 6136 Frisco Square Blvd., Frisco, Texas 75034-3246.

3.      Upon information and belief, both Zyxel Communications and Zyxel Networks are corporations duly organized and existing under the laws of Taiwan, with a place of business located at No. 2, Industry East Road IX, Hsinchu Science Park, East District 30076, Taiwan. Upon information and belief, Zyxel conducts business either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States. Upon information and belief, Zyxel imports, markets, offers, distributes, sells, and/or offers for sale the Accused Products

(exemplary products identified below) throughout the United States, the State of Texas, and this District. Zyxel Communications and Zyxel Networks may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as their agent for service because they engages in business in Texas, but have not designated or maintained a resident agent for service of process or a regular place of business in Texas as required by statute. This action arises out of that business.

4. Upon information and belief, Zyxel Communications and Zyxel Networks and each of their respective subsidiaries, affiliates, and related companies ("Zyxel and affiliates") comprise an extensive portfolio of computer networking products, including the Zyxel brand.

5. Upon information and belief, Zyxel and affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the Accused Devices in the United States, including in the State of Texas generally and this judicial district in particular.

6. Upon information and belief, Zyxel and affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

7. Upon information and belief, Zyxel and affiliates regularly contract with customers regarding equipment or services that will be provided by their affiliates on their behalf.

8. Upon information and belief, Zyxel and affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

## JURISDICTION AND VENUE

9. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.　This Court has personal jurisdiction over Zyxel because Zyxel regularly conducts business and has committed acts of patent infringement and/or has induced or contributed to acts of patent infringement by others in this District and in the State of Texas. [12] Zyxel, directly and/or through subsidiaries or intermediaries, has committed acts of infringement and continues to commit acts of infringement in this District by making, using, selling, offering to sell, and/or importing its Accused Products that infringe one or more of NetConnect's patents.

11.　Zyxel purposefully directs its Accused Products into established distribution channels within this District and the United States. Further, Zyxel induces its subsidiaries, affiliates, distributors, retail partners, and customers to make, use, sell, offer for sale, and/or import into the United States, including within this District, its Accused Products and place those products into the stream of commerce via established distribution channels knowing that such products would be sold and used in the United States, and in the Eastern District of Texas.

12.　For example, based on public information and information and belief, Ingram Micro is one of Zyxel's distributors of Accused Products and Ingram Micro has a location in the Eastern District of Texas at 1809 S. Frankford Rd., Carrollton, TX 75007. As additional examples, based on public information and information and belief, Zyxel has other distributors of Accused Products located in Texas including SHI International Corp. which has a location in Texas at 3828 Pecana Trail, Austin, TX 78749 and CDW LLC which has four locations in Texas at 10900 Stonelake Blvd Building 2 Suite 100, Austin, TX 78759; 5908 Headquarters Dr. Suite 400, Plano,

---

[1] *See, e.g.*, https://www.zyxel.com/sites/zyxel/files/dimond_physicians_US.pdf
[2] *See, e.g.,* https://www.zyxel.com/us/en-us/where-to-buy/distributors (identifying Ingram Micro as a distributor where Ingram Micro has a location at 1809 S. Frankford Rd., Carrollton, TX 75007).

TX 75024; 1616 S Voss Rd. Suite 301, Houston, TX 77057, and 10100 Reunion Place Suite 500, San Antonio, TX 78216.[34]

13.     For example, based on public information and information and belief, Zyxel has worked to provide Accused Products to a Texas company in the Eastern District of Texas (Kehr Technologies located at 5340 Legacy Dr. Ste. 150, Plano, TX 75024).  As additional examples, based on public information and information and belief, Zyxel has worked to provide Accused Products to other companies in Texas including the Houston Livestock Show and Rodeo and The State of Texas Department of Aging and Disability Services.[5]

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Zyxel is not a resident of the United States, and may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

## ASSERTED PATENTS

15.     NetConnect is the owner and the assignee of U.S. Patent No. 7,676,723 (the "'723 Patent"), entitled "Method for the protected transmission of data, particularly transmission over an air interface." NetConnect has ownership of all substantial rights in the '723 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '723 Patent is attached as **Exhibit A**. Claim 1 is an example of the claims asserted in the '723 Patent.

16.     Claim 1: Method for protected transmission of data packets, the method comprising:

---

[3] *See e.g.*, https://www.zyxel.com/us/en-us/where-to-buy/ecommerce-partners (showing SHI International Corp. and CDW LLC as eCommerce Partners in the United States).
[4] *See e.g.*, https://www.shi.com/us/customerservice/contact-us; https://www.cdw.com/content/cdw/en/solutions/international/north-america-locations.html.
[5] *See e.g.*, https://www.zyxel.com/sites/zyxel/files/success-story/HLSR%2C%20USA.pdf; https://www.zyxel.com/uploads/images/ss_knight_security_140121.pdf.

a) dividing at least one of the data packets into a sequence of data blocks, dividing at least one of the data blocks into a sequence of data, wherein a coding for each data in said sequence of data is represented by a sequence of a predefined number of on and off values,

b) forming a protection datum from the sequence of data and a protection block from the sequence of data blocks,

c) generating a first data request to repeat transmission of said sequence of data if the protection datum transmitted together with the data differs from a protection datum formed in a same manner upon receipt of at least one data block, and

d) generating a second data request to repeat transmission of said at least one data block if the protection block transmitted together with the data blocks differs from a protection block formed in a same manner upon receipt of at least one data packet.

17.    The '723 Patent is valid, enforceable, and was duly and legally issued on Mar. 9, 2010, in full compliance with Title 35 of the United States Code.

18.    NetConnect is the owner and the assignee of U.S. Patent No. 8,111,660 (the "'660 Patent"), entitled "Method and transmitter for transmitting data in a multi-carrier system via a number of transmitting antennas." NetConnect has ownership of all substantial rights in the '660 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '660 Patent is attached as **Exhibit B**. Claim 1 is an example of the claims asserted in the '660 Patent.

19.    Claim 1: A method of transmitting data by radio, comprising:

using a plurality of subcarriers of a frequency band and a plurality of antennas for transmission such that each antenna transmits data using the plurality of the subcarriers;

dividing data for transmission into a plurality of elements such that the number of data elements corresponds to the number of subcarriers;

for each antenna, assigning each element to a subcarrier for transmission, such that for at least two antennas and at least one subcarrier, different elements are assigned to said one subcarrier; and

before performing an OFDM modulation for each antenna, multiplying each element by an antenna-specific and an element-specific factor.

20.     The '660 Patent is valid, enforceable, and was duly and legally issued on Feb. 7, 2012, in full compliance with Title 35 of the United States Code.

21.     NetConnect is the owner and the assignee of U.S. Patent No. 8,170,476 (the "'476 Patent"), entitled "Emission power control for packet transmission." NetConnect has ownership of all substantial rights in the '476 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '476 Patent is attached as **Exhibit C**. Claim 1 is an example of the claims asserted in the '476 Patent.

22.     Claim 1: A method for transmitting data packets in a radio system between a transmitter and a receiver, comprising:

determining a specified nominal emission power for a data packet relative to a required reception quality;

transmitting the data packet with a first effective emission power, the first effective emission power being the nominal emission power or an emission power deviated from said nominal emission power due to certain boundary conditions;

when the first effective emission power is less than the specified nominal emission power,

deriving a new nominal emission power by adding the difference between the first effective emission power and the specified nominal emission power to the specified nominal emission power;

retransmitting the data packet with a second effective emission power, the second effective emission power being the new nominal emission power or an emission power deviated from the new nominal emission power due to certain boundary conditions; and

repeating the deriving and retransmitting until the effective applied emission power is equal to the specified nominal emission power; and

when the first effective emission power is greater than or equal to the specified nominal emission power, retransmitting the data packet with the specified nominal emission power.

23.    The '476 Patent is valid, enforceable, and was duly and legally issued on May 1, 2012, in full compliance with Title 35 of the United States Code.

24.    NetConnect is the owner and the assignee of U.S. Patent No. 8,433,326 (the "'326 Patent"), entitled "Radio network and method for transmitting data in a radio network." NetConnect has ownership of all substantial rights in the '326 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '326 Patent is attached as **Exhibit D**. Claim 1 is an example of the claims asserted in the '326 Patent.

25.    Claim 1: A radio network, comprising:

frequency channels;

devices transmitting data which use one of the frequency channels for a duration of a data transmission; and

7

a monitoring facility which additionally seizes the used frequency channel during pauses between data transmissions, wherein

the monitoring facility is configured

to monitor the used frequency channel for an attempted seizure by a device which does not belong to the radio network and

to perform an additional seizure of the frequency channel as a function of a detection of the attempted seizure by the device which does not belong to the radio network.

26.     The '326 Patent is valid, enforceable, and was duly and legally issued on Apr. 30, 2013, in full compliance with Title 35 of the United States Code.

27.     NetConnect is the owner and the assignee of U.S. Patent No. 9,069,053 (the "'053 Patent"), entitled "Method for the computer-assisted processing of measurements of features in a radio network." NetConnect has ownership of all substantial rights in the '053 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '053 Patent is attached as **Exhibit E**. Claim 1 is an example of the claims asserted in the '053 Patent.

28.     Claim 1: A method for computer-supported processing of measurements of features of a radio network including a plurality of base stations, one or more mobile objects, and a plurality of evaluation units the method comprising for a respective mobile object:

selecting from the plurality of base stations a particular base station currently within radio range of the respective mobile object, said radio range of the respective mobile object providing at least one of reception of field transmitted by the respective mobile object at the selected base station and reception of a field transmitted by the selected base station at the respective mobile object;

associating the selected base station with the respective mobile device;

as a result of associating the selected base station with the respective mobile device:

accessing, by the selected base station, a neighborhood list for the selected base station that lists one or more other base stations of the plurality of base stations as neighboring base stations with respect to the selected base station;

informing, by the selected base station, each of the neighboring base stations listed in the accessed neighborhood list of the association between the selected base station and the respective mobile device;

receiving, at a particular evaluation unit assigned to the selected base station, from the selected base station and from each of the neighboring base stations of the selected base station, measurements taken by the neighboring base stations regarding a feature of the field transmitted by the respective mobile object and

evaluating, by the particular evaluation unit assigned to the selected base station, the measurements received from the selected base station and from each of the neighboring base stations of the selected base station.

29.    The '053 Patent is valid, enforceable, and was duly and legally issued on Jun. 30, 2015, in full compliance with Title 35 of the United States Code.

30.    NetConnect is the owner and the assignee of U.S. Patent No. 9,414,297 (the "'297 Patent"), entitled "Method and network node for routing data packets in communication networks." NetConnect has ownership of all substantial rights in the '297 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '297 Patent is attached as **Exhibit F**. Claim 1 is an example of the claims asserted in the '297 Patent.

31.    Claim 1: A method of routing data packets in a wireless communication network formed from a plurality of network nodes, comprising:

transmitting data packets from a first network node acting as a source of the data packets to a second network node acting as a sink of the data packets with assistance of at least one further network node of the wireless communication network, the at least one further network node being disjoint with respect to the source node;

transmitting a first network message from the source node at least to one of the further network nodes such that the first network message is forwarded successively to each further network node until the further network node corresponds to the sink node, the first network message containing a value of a first validity period assigned to the first network message;

temporarily storing a first item of information about a next network node on a path to the source node and the value of the first validity period in a current further network node, the current further network node having made route information available based on the first network message such that the first item of information and the value are able to be temporarily stored,

wherein the value of the first validity period is stored such that all first items of information remain stored at least until a second network message sent by the sink node and acknowledging the first network message has been received by the source node, the first validity period being a lifetime of a route from the sink node to the source node.

32.    The '297 Patent is valid, enforceable, and was duly and legally issued on Aug. 9, 2016, in full compliance with Title 35 of the United States Code.

33.    NetConnect is the owner and the assignee of U.S. Patent No. 10,050,829 (the "'829 Patent"), entitled "Method for incorporating a communication device in a network, and arrangement having at least one network filter component and at least one configuration server."

NetConnect has ownership of all substantial rights in the '829 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '829 Patent is attached as **Exhibit G**. Claim 1 is an example of the claims asserted in the '829 Patent.

34.    Claim 1: A method for incorporating a communication device in a network having a set of configuration servers having at least one configuration server and a set of productive servers having at least one productive server, the method including:

a) establishing a connection between the communication device and the network, which connection is restricted solely to a stipulated selection from the set of configuration servers by a network filter switch operating in a first status;

b) obtaining, by the communication device, configuration data from the stipulated selection of the configuration servers, which configuration data stipulate access rights of the communication device to a selection from the set of productive servers; and

c) configuring, by the communication device, the communication device using the obtained configuration data such that access of the communication device is restricted to the selection from the set of productive servers by the network filter switch operating in a second status.

35.    The '829 Patent is valid, enforceable, and was duly and legally issued on Aug. 14, 2018, in full compliance with Title 35 of the United States Code.

36.    The '723, '660, '476, '326, '053, '297, and '829 Patents are collectively the "Patents-in-Suit" or the "Asserted Patents."

### ACCUSED PRODUCTS

37.    Zyxel makes, uses, offers to sell, sells, and/or imports into the United States 4G LTE networking products that infringe claims of the Asserted Patents.  Zyxel's infringing 4G LTE

Networking Products include, but are not limited to, Zyxel Nebula FWA70, Nebula LTE3301-PLUS, and all other similar products ("Zyxel 4G LTE Networking Products").

38.     Zyxel makes, uses, offers to sell, sells, and/or imports into the United States WiFi (802.11) networking products that infringe claims of the Asserted Patents.  Zyxel's infringing WiFi networking products include, but are not limited to, Zyxel NWA50AX - AX1800 4-Stream WiFi 6 Dual-Radio NebulaFlex Access Point, WAX650S, WAX630S, WAX610D, WAX510D, WAX655E, WAX300H, NWA210AXv2, NWA210AX, NWA110AX, NWA50AX Pro, NWA90AX, NWA50AX, NWA90AX, NWA55AXE, and all other similar products ("Zyxel WiFi Networking Products").

39.     Zyxel makes, uses, offers to sell, sells, and/or imports into the United States MPro Mesh Solutions products that infringe claims of the Asserted Patents.  Zyxel's infringing MPro Mesh Solutions products include, but are not limited to, Zyxel WX5610-B0 AX7800,  PE6601, EE6601, WE4400, NR5307, Broadband CPE Ethernet (EE6601-00, EX7501-B0, EX5601-T0, EX5601-T1, EX3501-T0), Broadband CPE Ethernet Gateway (EX5600-T1, EX3600-T0, EX3500-T0, EX3300-T0), Broadband CPE WiFi Extender (WE4400-00), DSL CPE VDSL IAD (DX5401-B0, DX3301-T0, VMG8825-T50K, VMG8623-T50B), VDSL Gateway (DX3300-T0, VMG3927-T50K, VMG3625-T50B), Ethernet CPE IAD (EX5501-B0, EX5401-B0, EX3301-T0, EMG5723-T50K, EMG5523-T50B), Ethernet CPE gateways (EMG3525-T50B), Network Extenders (WX3401-B0, WX3100-T0, WAP6807, WX3310-B Series), Wireless Extenders (WE3300-00, WE1300-00, WE4600-00, WX5600-T0, WE3100-00),XGS PON ONTs (AX7501-B0), XGS-PON VoIP Gateway (PE5301-01), Indoor Router (NR5103), Ethernet gateways (EE3300-00, EE4410-00, EE6510-10, EX7710-B0, EX5512-T0, EX3510-T0), Residential

12

Bonding gateways (DX4510-B1, DE1301-00), HGU (AX7501-B1, PE3301-00, PE3101-00, PX5302-00, PX5301-T0), and all other similar products ("Zyxel MPro Mesh Solutions Products").

40.     Zyxel makes, uses, offers to sell, sells, and/or imports into the United States Nebula Smart Mesh products that infringe claims of the Asserted Patents.  Zyxel's infringing Nebula Smart Mesh products include, but are not limited to, Zyxel Nebula AX5400 6-Stream WiFi 6 Dual-Radio NebulaFlex Access Point NWA210AXv2, and all other similar products ("Zyxel Nebula Smart Mesh Products").

41.     Zyxel makes, uses, offers to sell, sells, and/or imports into the United States Nebula Control Center products that infringe claims of the Asserted Patents.  Zyxel's infringing Nebula Control Center products include, but are not limited to, Zyxel Nebula Control Center, and all other similar products ("Zyxel Nebula Control Center Products").

42.     Additionally, Zyxel also provides Android and iOS applications for use with its 4G LTE Networking Products, WiFi Networking Products, MPro Mesh Solutions Products, Nebula Smart Mesh Products, and/or Nebula Control Center Products.  The Android and iOS applications include, but are not limited to, Zyxel One App, Zyxel Multy App, Zyxel Air App, Zyxel MPro Mesh App, Zyxel Nebula Mobile App, and all other similar applications ("Zyxel Applications")

43.     Zyxel's 4G LTE Networking Products, WiFi Networking Products, MPro Mesh Solutions Products, Nebula Smart Mesh Products, Nebula Control Center Products, and Zyxel Applications are collectively referred to as the "Accused Products."

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,676,723.

44.     The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

45.     In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '723 Patent by making,

using, offering for sale, selling, and/or importing Zyxel 4G LTE Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '723 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '723 Patent, as detailed in **Exhibit H**.

46.     As an example, as detailed in Exhibit H, Zyxel, using the Zyxel 4G LTE Networking Products, performs a method for protected transmission of data packets, the method comprising: a) dividing at least one of the data packets into a sequence of data blocks, dividing at least one of the data blocks into a sequence of data, wherein a coding for each data in said sequence of data is represented by a sequence of a predefined number of on and off values, b) forming a protection datum from the sequence of data and a protection block from the sequence of data blocks, c) generating a first data request to repeat transmission of said sequence of data if the protection datum transmitted together with the data differs from a protection datum formed in a same manner upon receipt of at least one data block, and d) generating a second data request to repeat transmission of said at least one data block if the protection block transmitted together with the data blocks differs from a protection block formed in a same manner upon receipt of at least one data packet.

47.     In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least Claim 1 of the '723 Patent by providing instructions via their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '723 Patent and by making, using, offering for sale, selling, and/or importing Zyxel 4G LTE Networking Products in the United States, including

14

within this Judicial District, that infringe at least Claim 1 of the '723 Patent without the authority of NetConnect.[6]

48.    In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '723 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel 4G LTE Networking Products), into the United States, including within this Judicial District, that infringe at least Claim 1 of the '723 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '723 Patent.

49.    The Zyxel 4G LTE Networking Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '723 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.    Any non-infringing uses of the Zyxel 4G LTE Networking Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

51.    Zyxel had knowledge of the '723 Patent at least as of the date when it was notified of the filing of this action.

52.    NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '723 Patent.

53.    Unless enjoined by this Court, Zyxel will continue to infringe the '723 Patent.

54.    Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

---

[6] *See*, *e.g.*, https://www.zyxel.com/us/en-us/support/download.

55.     Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,111,660.

56.     The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

57.     In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '660 Patent by making, using, offering for sale, selling, and/or importing Zyxel WiFi Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '660 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '660 Patent, as detailed in **Exhibit I**.

58.     As an example, as detailed in Exhibit I, Zyxel, using the Zyxel WiFi Networking Products, performs a method of transmitting data by radio, comprising: using a plurality of subcarriers of a frequency band and a plurality of antennas for transmission such that each antenna transmits data using the plurality of the subcarriers; dividing data for transmission into a plurality of elements such that the number of data elements corresponds to the number of subcarriers; for each antenna, assigning each element to a subcarrier for transmission, such that for at least two antennas and at least one subcarrier, different elements are assigned to said one subcarrier; and before performing an OFDM modulation for each antenna, multiplying each element by an antenna-specific and an element-specific factor.

59.     In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or

under the doctrine of equivalents, at least Claim 1 of the '660 Patent by providing instructions via their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '660 Patent and by making, using, offering for sale, selling, and/or importing Zyxel WiFi Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '660 Patent without the authority of NetConnect.[7]

60.    In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '660 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel WiFi Networking Products), into the United States, including within this Judicial District, that infringe at least Claim 1 of the '660 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '660 Patent.

61.    The Zyxel WiFi Networking Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '660 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

62.    Any non-infringing uses of the Zyxel WiFi Networking Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

63.    Zyxel had knowledge of the '660 Patent at least as of the date when it was notified of the filing of this action.

---

[7] *See supra* at fn. 3.

64.     NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '660 Patent.

65.     Unless enjoined by this Court, Zyxel will continue to infringe the '660 Patent.

66.     Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

67.     Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

<strong>COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,170,476.</strong>

68.     The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

69.     In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '476 Patent by making, using, offering for sale, selling, and/or importing Zyxel 4G LTE Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '476 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '476 Patent, as detailed in **Exhibit J**.

70.     As an example, as detailed in Exhibit J, Zyxel, using the Zyxel 4G LTE Networking Products, performs a method for transmitting data packets in a radio system between a transmitter and a receiver, comprising: determining a specified nominal emission power for a data packet relative to a required reception quality; transmitting the data packet with a first effective emission power, the first effective emission power being the nominal emission power or an emission power

deviated from said nominal emission power due to certain boundary conditions; when the first effective emission power is less than the specified nominal emission power, deriving a new nominal emission power by adding the difference between the first effective emission power and the specified nominal emission power to the specified nominal emission power; retransmitting the data packet with a second effective emission power, the second effective emission power being the new nominal emission power or an emission power deviated from the new nominal emission power due to certain boundary conditions; and repeating the deriving and retransmitting until the effective applied emission power is equal to the specified nominal emission power; and when the first effective emission power is greater than or equal to the specified nominal emission power, retransmitting the data packet with the specified nominal emission power.

71.     In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least Claim 1 of the '476 Patent by providing instructions via their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '476 Patent and by making, using, offering for sale, selling, and/or importing Zyxel 4G LTE Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '476 Patent without the authority of NetConnect.[8]

72.     In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '476 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel 4G LTE Networking Products), into the United States, including within this Judicial District, that

---

[8] *See supra* at fn. 3.

infringe at least Claim 1 of the '476 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '476 Patent.

73.     The Zyxel 4G LTE Networking Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '476 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

74.     Any non-infringing uses of the Zyxel 4G LTE Networking Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

75.     Zyxel had knowledge of the '476 Patent at least as of the date when it was notified of the filing of this action.

76.     NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '476 Patent.

77.     Unless enjoined by this Court, Zyxel will continue to infringe the '476 Patent.

78.     Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

79.     Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,433,326.

80.     The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

81.     In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '326 Patent by making,

20

using, offering for sale, selling, and/or importing Zyxel WiFi Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '326 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '326 Patent, as detailed in **Exhibit K**.

82.    As an example, as detailed in Exhibit K, Zyxel, using the Zyxel WiFi Networking Products, provides a radio network, comprising: frequency channels; devices transmitting data which use one of the frequency channels for a duration of a data transmission; and a monitoring facility which additionally seizes the used frequency channel during pauses between data transmissions, wherein the monitoring facility is configured to monitor the used frequency channel for an attempted seizure by a device which does not belong to the radio network and to perform an additional seizure of the frequency channel as a function of a detection of the attempted seizure by the device which does not belong to the radio network.

83.    In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least Claim 1 of the '326 Patent by providing instructions via their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '326 Patent and by making, using, offering for sale, selling, and/or importing Zyxel WiFi Networking Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '326 Patent without the authority of NetConnect.[9]

---

[9] *See supra* at fn. 3.

84.    In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '326 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel WiFi Networking Products), into the United States, including within this Judicial District, that infringe at least Claim 1 of the '326 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '326 Patent.

85.    The Zyxel WiFi Networking Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '326 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

86.    Any non-infringing uses of the Zyxel WiFi Networking Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

87.    Zyxel had knowledge of the '326 Patent at least as of the date when it was notified of the filing of this action.

88.    NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '326 Patent.

89.    Unless enjoined by this Court, Zyxel will continue to infringe the '326 Patent.

90.    Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

91.    Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 9,069,053.

92.     The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

93.     In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '053 Patent by making, using, offering for sale, selling, and/or importing Zyxel MPro Mesh Solutions Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '053 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '053 Patent, as detailed in **Exhibit L**.

94.     As an example, as detailed in Exhibit L, Zyxel, using the Zyxel MPro Mesh Solutions Products, performs a method for computer-supported processing of measurements of features of a radio network including a plurality of base stations, one or more mobile objects, and a plurality of evaluation units the method comprising for a respective mobile object: selecting from the plurality of base stations a particular base station currently within radio range of the respective mobile object, said radio range of the respective mobile object providing at least one of reception of field transmitted by the respective mobile object at the selected base station and reception of a field transmitted by the selected base station at the respective mobile object; associating the selected base station with the respective mobile device; as a result of associating the selected base station with the respective mobile device: accessing, by the selected base station, a neighborhood list for the selected base station that lists one or more other base stations of the plurality of base stations as neighboring base stations with respect to the selected base station; informing, by the selected base station, each of the neighboring base stations listed in the accessed neighborhood list of the association between the selected base station and the respective mobile device; receiving, at

23

a particular evaluation unit assigned to the selected base station, from the selected base station and from each of the neighboring base stations of the selected base station, measurements taken by the neighboring base stations regarding a feature of the field transmitted by the respective mobile object and evaluating, by the particular evaluation unit assigned to the selected base station, the measurements received from the selected base station and from each of the neighboring base stations of the selected base station.

95.    In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least Claim 1 of the '053 Patent by providing instructions via their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '053 Patent and by making, using, offering for sale, selling, and/or importing Zyxel MPro Mesh Solutions Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '053 Patent without the authority of NetConnect.[10]

96.    In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '053 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel MPro Mesh Solutions Products), into the United States, including within this Judicial District, that infringe at least Claim 1 of the '053 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '053 Patent.

---

[10] *See supra* at fn. 3.

97.     The Zyxel MPro Mesh Solutions Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '053 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

98.     Any non-infringing uses of the Zyxel MPro Mesh Solutions Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

99.     Zyxel had knowledge of the '053 Patent at least as of the date when it was notified of the filing of this action.

100.     NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '053 Patent.

101.     Unless enjoined by this Court, Zyxel will continue to infringe the '053 Patent.

102.     Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

103.     Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

### COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 9,414,297.

104.     The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

105.     In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '297 Patent by making, using, offering for sale, selling, and/or importing Zyxel Nebula Smart Mesh Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '297 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues

to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '297 Patent, as detailed in **Exhibit M**.

106.    As an example, as detailed in Exhibit M, Zyxel, using the Zyxel Nebula Smart Mesh Products, performs a method of routing data packets in a wireless communication network formed from a plurality of network nodes, comprising: transmitting data packets from a first network node acting as a source of the data packets to a second network node acting as a sink of the data packets with assistance of at least one further network node of the wireless communication network, the at least one further network node being disjoint with respect to the source node; transmitting a first network message from the source node at least to one of the further network nodes such that the first network message is forwarded successively to each further network node until the further network node corresponds to the sink node, the first network message containing a value of a first validity period assigned to the first network message; temporarily storing a first item of information about a next network node on a path to the source node and the value of the first validity period in a current further network node, the current further network node having made route information available based on the first network message such that the first item of information and the value are able to be temporarily stored, wherein the value of the first validity period is stored such that all first items of information remain stored at least until a second network message sent by the sink node and acknowledging the first network message has been received by the source node, the first validity period being a lifetime of a route from the sink node to the source node.

107.    In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least Claim 1 of the '297 Patent by providing instructions via

26

their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '297 Patent and by making, using, offering for sale, selling, and/or importing Zyxel Nebula Smart Mesh Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '297 Patent without the authority of NetConnect.[11]

108.    In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '297 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel Nebula Smart Mesh Products), into the United States, including within this Judicial District, that infringe at least Claim 1 of the '297 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '297 Patent.

109.    The Zyxel Nebula Smart Mesh Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '297 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

110.    Any non-infringing uses of the Zyxel Nebula Smart Mesh Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

111.    Zyxel had knowledge of the '297 Patent at least as of the date when it was notified of the filing of this action.

112.    NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '297 Patent.

---

[11] *See supra* at fn. 3.

113.    Unless enjoined by this Court, Zyxel will continue to infringe the '297 Patent.

114.    Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

115.    Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

### COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 10,050,829.

116.    The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

117.    In violation of 35 U.S.C. § 271(a), Zyxel has directly infringed and continue to directly infringe, both literally and/or under the doctrine of equivalents, the '829 Patent by making, using, offering for sale, selling, and/or importing Zyxel Nebula Control Center Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '829 Patent without the authorization of NetConnect. For example, Zyxel has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '829 Patent, as detailed in **Exhibit N**.

118.    As an example, as detailed in Exhibit N, Zyxel, using the Zyxel Nebula Control Center Products, performs a method for incorporating a communication device in a network having a set of configuration servers having at least one configuration server and a set of productive servers having at least one productive server, the method including: a) establishing a connection between the communication device and the network, which connection is restricted solely to a stipulated selection from the set of configuration servers by a network filter switch operating in a first status; b) obtaining, by the communication device, configuration data from the stipulated selection of the configuration servers, which configuration data stipulate access rights of the

28

communication device to a selection from the set of productive servers; and c) configuring, by the communication device, the communication device using the obtained configuration data such that access of the communication device is restricted to the selection from the set of productive servers by the network filter switch operating in a second status.

119.    In violation of 35 U.S.C. § 271(b), Zyxel has induced their customers and/or end users and continue to induce their customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least Claim 1 of the '829 Patent by providing instructions via their website(s), product manuals, user manuals, product support, or through other documents that induce their customers to directly infringe the '829 Patent and by making, using, offering for sale, selling, and/or importing Zyxel Nebula Control Center Products in the United States, including within this Judicial District, that infringe at least Claim 1 of the '829 Patent without the authority of NetConnect.[12]

120.    In violation of 35 U.S.C. § 271(c), Zyxel has actively contributed to direct infringement, and actively contribute to direct infringement of the '829 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to Zyxel Nebula Control Center Products), into the United States, including within this Judicial District, that infringe at least Claim 1 of the '829 Patent without the authority of NetConnect. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '829 Patent.

121.    The Zyxel Nebula Control Center Products are especially made and/or especially adapted for use with the claimed invention of at least Claim 1 of the '829 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

---

[12] *See supra* at fn. 3.

122. Any non-infringing uses of the Zyxel Nebula Control Center Products would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

123. Zyxel had knowledge of the '829 Patent at least as of the date when it was notified of the filing of this action.

124. NetConnect, or its predecessors-in-interest, have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '829 Patent.

125. Unless enjoined by this Court, Zyxel will continue to infringe the '829 Patent.

126. Because of Zyxel's infringing activities, NetConnect has suffered damages and will continue to suffer damages in the future.

127. Zyxel's continuing acts of infringement are willful, entitling NetConnect to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

128. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, NetConnect demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

129. NetConnect respectfully requests that this Court enter judgment in NetConnect's favor and against Zyxel as follows:

A. That Zyxel has directly and indirectly infringed at least one claim from each of the Asserted Patents;

B. That Zyxel's infringement has been willful;

30

C.      An award of damages to be paid by Zyxel adequate to compensate NetConnect for Zyxel's infringement of the Asserted Patents and in no event less than a reasonable royalty together with interests and costs;

D.      An award of treble damages in accordance with 35 U.S.C. § 284;

E.      An order enjoining Zyxel and its officers, agents, servants, employees, users, attorneys, and all those persons in active concert or participation with Zyxel from the acts described in this Complaint;

F.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of NetConnect's reasonable attorneys' fees; and

G.      Any other relief at law or in equity as the Court deems just and proper.

Dated: July 1, 2026

Respectfully submitted,

/s/ *Gary R. Sorden*
Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com
James C. Williams
Texas Bar No. 24075284
jwilliams@coleschotz.com
Timothy J.H. Craddock
Texas Bar No. 24082868
tcraddock@coleschotz.com
Arjun Nair
Texas Bar No. 24120122
anair@coleschotz.com
Seokin Yeh
Texas Bar No. 24131942
syeh@coleschotz.com
COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

**ATTORNEYS FOR PLAINTIFF
NETCONNECT WIRELESS LLC**